UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b/o** | * | |
| **SEGOVIA INTERIOR CONSTRUCTION, INC.** | | |
| **1007 Skidmore Drive** | * | |
| **Annapolis, MD 21012** | | |
| | * | |
| | | |
| **Plaintiff** | * | |
| | | |
| **v.** | * | **Case No.:** |
| | | |
| **LIBERTY MUTUAL INSURANCE COMPANY** | * | |
| **175 Berkeley Street** | | |
| **Boston, MA 02116** | * | |
| | | |
| **SERVE:** **Corporation Service Company** | * | |
| **1090 Vermont Ave., NW, Suite 430** | | |
| **Washington, DC 20005** | * | |
| | | |
| **AND** | * | |
| | | |
| **Corporation Service Company** | * | |
| **84 State St.** | | |
| **Boston, MA 02109** | * | |
| | | |
| **Defendant** | | |

_____

## **COMPLAINT**

Plaintiff, Segovia Interior Construction, Inc. ("Segovia"), by its undersigned attorneys, sets forth the following cause of action against Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), and in support thereof states as follows:

1

**THE PARTIES**

1.      Segovia is a corporation organized and existing under the laws of the District of Columbia with its principal place of business in the District.

2.      Upon information and belief, Defendant, Liberty Mutual, is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Liberty Mutual is a commercial surety company that issues, among other things, payment and performance bonds on private and public construction projects in the District of Columbia.

**JURISDICTION**

3.      This Court has jurisdiction pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3133, as the bond upon which this Complaint is based was issued pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3131.

4.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse of citizenship.

**VENUE**

5.      Venue is appropriate pursuant to the provisions of the Federal Miller Act, 40 U.S.C. § 3133, as the construction project which is the subject of this Complaint was located in Washington, D.C.

**BACKGROUND FACTS**

6.      Upon information and belief, the United States Department of Veteran Affairs (the "Owner" or "VA") executed a contract (the "Prime Contract") with Homeland Security Construction Company ("Homeland" or "HSCC") for a project referred to as the Veterans

2

Administration Medical Center – Ward 4C Patient Ward Expansion Project (the "Project").

7.      The Project involved renovation of Ward 4C, which is a section of the fourth floor at the Veterans Administration Medical Center located at 50 Irving Street NW, Washington, D.C. 20422. Ward 4C consists of patient rooms, corridors, office space and interior staff and lounge/waiting areas.

8.      As a condition of the Prime Contract, and to secure the faithful performance of the same, Homeland, as principal, executed and delivered to the VA a labor and material payment bond, no. 017-034-488, (the "Bond") with Liberty Mutual as surety. **(Exhibit 1).**

9.      Segovia entered into a contract with HSCC for the demolition and interior finishes for the VA Medical Center 4C Patient Ward Expansion (Project). **(Exhibit 2).**

10.     The approved baseline schedule projected that the project was supposed to proceed from September 28, 2011 for 362 calendar days through completion on September 25, 2011. Segovia's work was to begin on November 15, 2010 and go through September 11, 2011 for a maximum total days present on the project of 300 calendar days.

11.     From the onset, the project was plagued with delays, inefficiencies and additional costs, including delays resulting from the Department of Veterans Affairs' ("VA") inability to provide the required access, respond to the on-going issues, requests for information (RFI's) and the required design changes in a timely fashion.

12.     As of August 30, 2013, the delay on the Project amounted to 792 calendar days of delay to Segovia's work and 821 calendar days to the project's substantial completion date, and only got worse following that day.

13.     Segovia's plan, based on the contract documents was simple, after access was provided to the 4th floor, demolition and material disposal would proceed from November 15,

3

2010 through January 3, 2011. Completion of this work would allow the mechanical contractor, General Mechanical Services, LLC, to complete the required core drilling for the new plumbing rough-ins by January 20, 2011, allowing Segovia to construct the 4th floor walls by March 28, 2011.

14.     The plumbing/mechanical rough-ins would proceed concurrently and, by April 21, 2011, would be sufficiently complete to allow the installation of the drywall, doors and drop ceilings with completion anticipated on July 19, 2011. This was to be the end of Segovia's work with the exception of the area leading to the remodeled 4th floor or Phase 2 ("PH-2") which was to be completed between August 26, 2011 and September 19, 2011. Concurrently and interdependent with Segovia's work, plumbing and mechanical items such as, fixtures, AHU's, trim and other work were to proceed culminating with the completion of the Project on September 28, 2011.

15.     As of November 15, 2010, Segovia was not granted access to the 4th floor. In fact, no access was provided until 95 calendar days later on January 18, 2011 and then, access was granted in a piecemeal manner, backing down the floor in four smaller phases. The second area was not released until March 13, 2011, or 118 calendar days late, the third area was released May 10, 2011, 176 calendar days late, and the final area was released on July 11, 2011, 8 months late. This late, piecemeal release of work areas not only caused a substantial amount of delay, but also a great loss of labor productivity. Segovia was forced to lay off and re-hire labor as well as mobilize and demobilize multiple times. Segovia is entitled to compensation for the resulting labor inefficiency caused by the piecemeal release of work areas, but also for the costs necessary to maintain the required supervision.

16.     The VA and/or HSCC also dictated new disposal restrictions that not only

increased the amount of labor required, but also further delayed the Project. Based on the contract documents, Segovia anticipated disposing of all of trash and debris through a trash chute which was to be installed between column lines R-1 and S-1. This chute was to be installed straight downwards ending at the anticipated construction staging area where a dumpster was to be placed. Segovia was not permitted to use that trash chute contrary to the construction documents, however.

17.    The new disposal restriction substantially increased the labor costs and delayed the operations. Segovia was required to break the trash down enough to fit it into a 3' x 4' cart, push it through the operating hospital, down the elevator, through Area A and C, through the ground floor plaza, past the anticipated construction area to a temporary dumpster in the parking lot near the receiving area. The trip took at least 45 minutes to dispose of a single cart of waste. According to Segovia's daily reports, two full time laborers were required just to dispose of the trash. One would push the cart from the 4th floor to the elevator area on the ground floor while the other would take it from the ground floor elevator to the dumpster.

18.    Segovia is entitled to compensation for the labor costs as well as the labor inefficiency and delay caused by the additional disposal restrictions.

19.    Further exacerbating the problem, each time the VA moved out of an area, it left trash and furniture behind. Segovia was directed to remove this trash as well. While a change order was issued for the additional labor costs, the change did not account for the impact to the project's completion.

20.    The problem causing the largest delay to the project was the number of conflicts with the core drilling operation and the amount of time the VA took to resolve the resulting RFI's and subsequent change or requests (COR's), one of which remain unresolved.

21.     The core drilling, which was critical to the mechanical and plumbing systems and to the follow-on wall construction was to be performed in one week between January 4, 2011 and January 11, 2011. Core drilling attempts after the 95 calendar day lack of access and subsequent piecemeal release of reduced areas revealed numerous rebar obstructions. These obstructions precluded the progress of work and resulted in the generation of RFI's which remained unanswered for a prolonged period of time delaying the mechanical/plumbing contractor as well as Segovia's follow-on work. In fact, the core drilling activities remained in progress well into 2012 and some continuing into 2013 as a result of unresolved RFI's or COR's. Indeed, fifty seven (57) RFI's and thirty three (33) COR's remained unresolved as of May 23, 2013. Segovia has completed work in an inefficient piecemeal manner wherever possible.

22.     In summary, as of August 30, 2013, Segovia had been delayed 792 calendar days due to access issues, VA and/or HSCC's dilatory conduct in responding to RFI's and COR's as well as other project issues that caused the piecemeal out-of-sequence work.

23.     Segovia submitted a certified request for equitable adjustment ("Claim") on or about December 2013 to HSCC for the foregoing costs through August 30, 2013, which Claim was audited by an independent auditor and approved. The total additional costs associated with the foregoing delay and out of sequence work is $385,511.47, which amount was adjusted to account for partial payments following the original submission of the Claim.   These costs/damages set forth in Segovia's Claim included, but were not limited to, labor escalation costs; additional direct labor costs; additional payroll burden; extended field overhead costs; extended home office overhead costs; proposal preparation costs; and additional profit.

24.     This amount does not include the additional but unpaid work. To wit: Segovia

was required to perform addition and extra-contractual work that resulted in a number of proposed change orders, as well as required to work out of sequence and in a fashion not consistent with industry standard or the project plans and schedule. The VA and/or HSCC has failed to pay a change order dated June 3, 2015 for the installation of gypsum board and other finishes in the chapel area (Proposed change order (PCO) No. 29) and the amount therein of $11,072.31 remains due. **(Exhibit 3).**

25.     Upon information and belief, HSCC passed-through Segovia's Claim to the VA.

26.     Segovia has substantially completed performance of its work on the Project, but has not been paid costs set forth above.

27.     All conditions precedent required to bring this action have been fulfilled by Segovia, including but not limited to commencing the action no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

## COUNT I

**(Action on Payment Bond)**

28.     Segovia adopts and incorporates by reference herein its averments contained in the foregoing paragraphs.

29.     HSCC, as principal, and Liberty Mutual, as surety, executed and delivered the Bond to the VA for the protection of all persons having a direct contractual relationship with HSCC, including Segovia, for the furnishing of labor and/or materials on the Project.

30.     Under the terms of the Bond, as well as the Miller Act, Liberty Mutual is liable to Segovia for all unpaid monies due and owing to Segovia as described herein.

31.     Segovia has complied with all requirements of 40 U.S.C. § 3133(b)(2) *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Segovia Interior Construction, Inc., demands judgment against Defendant, Liberty Mutual Insurance Company, in an amount in excess of $396,583 which amount will be proven at trial, plus interest and court costs, and for such other and further relief as the Court deems just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Segovia demands trial by jury in this action of all issues so triable.

Date: August  25, 2015

Respectfully submitted,

_____/s/_____

Jessica A. duHoffmann
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
jduhoffm@milesstockbridge.com
www.milesstockbridge.com